**CALLAHAN & BLAINE, APLC**
Edward Susolik, Esq. (SBN 151081)
ES@callahan-law.com
Sharon T, Yuen, Esq. (SBN 228356)
syuen@callahan-law.com
3 Hutton Centre Drive, Ninth Floor
Santa Ana, California 92707
Telephone: (714) 241-4444
Facsimile: (714) 241-4445

Attorneys for Plaintiff
CALLAHAN & BLAINE, APLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALLAHAN & BLAINE, APLC, | CASE NO. **8:24-cv-2622** |
| Plaintiff, | **COMPLAINT FOR BREACH OF CONTRACT** |
| v. | |
| INDIAN HARBOR INSURANCE COMPANY, a Delaware Corporation, and DOES 1-10 inclusive, | |
| Defendants. | |

Plaintiff Callahan & Blaine, APLC ("Plaintiff"), by and through counsel, for its Complaint against Defendants Indian Harbor Insurance Company ("Indian Harbor"), and DOES 1-10 (collectively, "Defendants"), allege as follows:

## NATURE OF THE CASE

1. This lawsuit arises from Indian Harbor's wrongful denial of a claim made under an insurance policy it sold to The Picerne Group ("TPG"), TPG Property Management, Inc. ("TPG Management"), TPG (Metropolitan) LLC ("TPG Metropolitan") and Pomona Park & Plaza ("Pomona Park"; collectively, the "TPG Entities").

2. In May 2020, a lawsuit was filed naming TPG Metropolitan and Pomona Park as defendants. The lawsuit alleged potentially covered "act[s] or omission[s] including personal injury, in the performance of professional services" under the policy and was tendered to Indian Harbor for defense and indemnity.

3. Based on a narrow and restrictive reading of the Errors and Omissions policy it sold, Indian Harbor denied coverage.

4. Plaintiff served as defense counsel for TPG Metropolitan and Park Plaza for that lawsuit and received an assignment of rights in exchange for a covenant not to execute on outstanding legal fees from TPG. Pursuant to that assignment, Plaintiff brings this instant breach of contract action against Indian Harbor.

## THE PARTIES

5. Plaintiff Callahan & Blaine, APLC is, and at all times relevant herein was, a Professional Law Corporation with its principal place of business in the County of Orange, and State of California.

6. Defendant Indian Harbor Insurance Company is a Delaware corporation, headquartered in Stamford, Connecticut. At all relevant times herein, Indian Harbor was engaged in the business of offering insurance nationwide (including in California and this District) and is a subsidiary of XL Reinsurance America, which in turn is part of the AXA XL group.

7. Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES 1 through 10, inclusive, and therefore sue said defendants by such fictitious business names. Plaintiff will amend this Complaint by inserting their true names and capacities when ascertained.

8. Plaintiff is informed, believe and thereon alleges that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that the damages as herein alleged were proximately caused by such defendants. Plaintiff is informed, believes and thereon alleges that each of the

defendants designated as a DOE is responsible in some manner for the events and happenings herein referred to, and thereby proximately caused injuries and damages as herein alleged.

9.     Plaintiff is informed, believes and thereon alleges that at all times herein mentioned each of the defendants was the agent and employee of each of the remaining defendants, and in doing the things alleged below, was acting within the scope of such agency.

## JURISDICTION AND VENUE

10.    This Court has jurisdiction under 28 U.S.C. section 1332 because this is a civil action between citizens of different states in which the amount in controversy exceeds $75,000, exclusive of interest and costs.

11.    Venue in this Court is proper under 28 U.S.C. section 1391(b)(2) because the events or omissions giving rise to the claims at issue occurred within this judicial district.

## FACTUAL ALLEGATIONS

## THE INDIAN HARBOR POLICY

12.    In exchange for a substantial premium, Indian Harbor sold Policy No. MPP903701601 to the TPG Entities, in effect from June 15, 2019 to June 1, 2020 (the "Policy").  The Policy provides general limits of $1,000,000 each claim and $1,000,000 in the aggregate.  A true and correct copy of the Policy is attached as **Exhibit A** and incorporated by reference.

13.    The Policy provides broad Errors & Omissions coverage for professional management services, including as follows:

> **B. WHAT IS COVERED**
>
> Subject to all terms and conditions of this policy, the **Company** will pay on the **Insured's** behalf damages and **defense expenses** arising out of a **claim** first made against the **Insured** during a policy year, and reported to the **Company** in writing during that **policy year**, by reason of

an actual or alleged act or omission including personal injury, in the performance of professional services.

. . .

14. The Policy requires Indian Harbor to defend and settle as follows:

**D. DEFENSE AND SETTLEMENT**

The **Company** will have the right and duty to defend all covered **claims** brought in the United States, its territories and possessions. While the **Company** may seek the **Insured's** input in selecting defense counsel, the **Company** retains the right to make that selection.

Subject to the **Company's** guidelines, the **Insured** and not the **Company** will have the duty to investigate and defend all **claims** brought outside of the United States of America, its territories and possessions. Payment by the **Company** of covered defense expenses with respect to any such claims shall be subject to compliance by the **Insured** and the **Insured's** selected defense counsel with the **Company's** reasonable guidelines.

The **Company'**s obligation to defend and/or pay any damages or defense expenses will cease when the **Limit of Liability** has been exhausted.

The **Company** will not settle any **claim** without the **Insured's** consent. If, however, the **Insured** refuses to consent to any settlement recommended by the **Company** and acceptable to the claiming party, and the opportunity to effectuate that settlement is lost, then the **Company's** liability for that **claim** will not exceed the lesser of the lost settlement amount plus fifty percent (50%) of **damages** and **defense expenses** incurred by the **Insured** in excess of the lost settlement amount, or the remaining **Limits of Liability**

15. The Policy contains the following pertinent definitions:

**A. DEFINITIONS**

Whenever used in this policy, the term:

1. **Claim** means a written demand received by the **Insured** for money, services, equitable relief or a request to toll or waive any applicable statute of limitations; provided, however, **claim** does not include any investigation, proceeding or prosecution initiated by any governmental, administrative, regulatory or prosecutorial authority.

2. **Company** means the insurance company named in the Declarations.

3. **Damages** means a monetary judgment or monetary award which the **Insured** is legally obligated to pay, including: statutory damages; punitive, multiplied or exemplary damages, where insurable by law; or pre-judgment and post-judgment interest. **Damages** also means a monetary settlement to which the **Company** agrees on an **Insured's** behalf. However, damages does not include:

> a. taxes, fines, penalties, forfeitures or court-imposed monetary sanctions;
>
> b. the return, restitution, reduction, compromise or refund of commissions, fees, premiums, charges, gratuities or other compensation paid to an **Insured**;
>
> c. the cost to correct, complete or re-perform any professional services;
>
> d. the cost of compliance with any order for, grant of or agreement to provide non-monetary relief, including services or injunctive relief; or
>
> e. any amounts uninsurable as a matter of law or public policy.

4. **Defense expenses** means:

> a. reasonable and necessary fees charged and expenses incurred by attorneys designated by the **Company** to represent the **Insured**;
>
> b. all other reasonable and necessary fees, costs and expenses incurred at the **Company's** request;
>
> c. premiums on appeal bonds, attachment bonds or similar bonds however, the **Company** is not obligated to apply for or furnish such bonds.
>
> **Defense expenses** do not include salaries, compensation or overhead paid or incurred by the **Company** or by the **Insured.**

. . .

6. **Insured** means:

> a. the **Named Insured**;
>
> b. any **subsidiary**;
>
> c. any past or present partner, principal, shareholder, officer, director, member, employee or independent contractor, leased employee of the **Named Insured** or a **subsidiary**, but only for **claims** arising from

**professional services** rendered in the course and scope of their duties on behalf of the **Named Insured**; . . .

7. **Named Insured** means the person or entity designated in the Declarations as **Named Insured**.

8. **Personal injury** means malicious prosecution, abuse of process, defamation, false imprisonment, wrongful eviction, libel, slander or violation of a person's right of privacy.

. . .

11. **Professional Services** means those services specified in Item 7. in the Declarations performed by an **Insured** for others for a fee or other remuneration inuring to the benefit of the **Named Insured**.

. . .

13. **Subsidiary** means any entity which the **Named Insured** maintains a majority interest. Any entity that becomes a **subsidiary** during the policy period and whose annual gross revenue exceeds 15% of the **Named Insured's** gross revenue listed in the application for this policy will be considered an **Insured** only after notice to the **Company** within sixty (60) days of such transaction and any adjustment to the premium or terms and conditions have been agreed by the **Named Insured** and endorsed by the **Company**.

## THE UNDERLYING ACTION

16. In May 2020, a lawsuit was filed entitled *Southern California Housing Rights Center, Inc. dba Housing Rights Center v. TPG (Metropolitan), LLC, Pomona Park & Plaza LLC, et al.*, Case No. 2:20-cv-03056-JAK-PLAx, in the United States District Court, Central District of California (the "Underlying Action").

17. In the Underlying Action, Southern California Housing Rights Center ("Housing Rights Center") alleged against TPG Metropolitan and Pomona Plaza causes of action for violation of the Fair Housing Act (42 U.S.C. §§ 3601-3619) and the California Fair Employment and Housing Act (Cal. Gov't Code §§ 12927-12989.3). Housing Rights Center alleged that TPG Metropolitan and Pomona Plaza engaged in disparate treatment or disparate impact by committing discriminatory

practices against seniors, families with children, and blacks in furtherance of their campaign to market and operate 777 Place Apartments as rental housing for university students.

18. TPG Metropolitan and Pomona Park were alleged to own and operate 777 Place Apartments, located at 750 and 777 East Third Street in Pomona. 777 Place Apartments contain 472 units, each of which is a "dwelling" under the Fair Housing Act, 42 U.S.C. § 3602(b), and a "housing accommodation" under the Fair Employment and Housing Act, Cal. Govt. Code § 12927(d).

19. The TPG Entities timely tendered the Underlying Action to Indian Harbor for defense and indemnity under the Policy.

**INDIAN HARBOR'S WRONGFUL DENIAL OF COVERAGE**

20. On January 19, 2021, Indian Harbor denied coverage primarily on the ground that Pomona Park and/or TPG Metropolitan were not "subsidiaries" of the named insured TPG Management.

21. To refute Indian Harbor's denial, the TPG Entities provided documents and information to Indian Harbor that support coverage and evidence Indian Harbor's defense obligation under the Policy.

22. The Policy was issued to TPG Management to insure against professional services claims, defined as "Property Management and Asset Management services." The purpose and intent of the Policy was made by the original and supplemental application, which was submitted under TPG and intended to broadly insure management decisions made through TPG's related entities.

23. These related entities include both TPG Management and TPG Metropolitan. The application was submitted in in this manner because TPG Management's employees fall under the parent TPG and then operate as the managers for the underlying properties held in individual LLCs. Indian Harbor's interpretation of the Policy – which covers "property management and asset

management services" for an entity that does not have any employees to render such services – impermissibly renders coverage illusory. *Safeco Ins. Co. of Am. v. Robert S.* (2001) 26 Cal.4th 758 (adopting insurer's interpretation of "illegal act" exclusion impermissibly excludes negligent acts, rendering coverage illusory contrary to the reasonable expectations of the insured).

24. Indian Harbor's denial was wrong because the applicant for the Policy was TPG, and it is the proper Named Insured for all liabilities under the Policy. TPG has 43 employees and 49,563,978 in projected assets disclosed to Indian Harbor. TPG Management had zero employees and zero assets. The address for both TPG and TPG Management is 5000 Birch Street, Suite 900, Newport Beach, CA 92660.

25. TPG Metropolitan, as the named defendant in the Underlying Action, was merely a holding entity on title for 777 Place Apartments and was the only entity publicly disclosed through a title search. All management activities were conducted through TPG Management. Therefore, any liability asserted against TPG Metropolitan would be attributable against TPG Management.

26. As further evidence of this understanding, in an e-mail dated June 12, 2019, senior underwriter Kevin Kiernan of AXA/XL/Indian Harbor admitted that "this policy covers the third party property management part of the organization," which is "the subsidiary TPG Management." Thus, the Policy was understood and intended to cover the management activities of the TPG-related entities that fall under the parent TPG.

27. Indian Harbor refused to reverse its wrongful coverage denial. The Underlying Action settled and was dismissed with prejudice on May 31, 2022.

28. In April 2024, TPG assigned its rights under Policy to Plaintiff. California law is clear that once an insurer refuses to defend, the insured may assign his or her claims against the insurer to the injured party in exchange for a covenant not to execute. Such assignment can be made "without consent of the insurance

carrier, even when the policy provisions provide the contrary." *Murphy v. Allstate Ins. Co.* (1976) 17 Cal.3d 937, 942; *see Smith v. State Farm Mut. Auto. Ins. Co.* (1992) 5 Cal.App.4th 1104, 1110. Plaintiff now brings this instant action to recover defense costs owed by Indian Harbor.

## FIRST CAUSE OF ACTION

### (Breach of Contract against Nationwide and DOES 1-10)

29. Plaintiff incorporates by reference all of the allegations in paragraphs 1 through 28 of this Complaint as though fully set forth herein.

30. The Policy constitutes and comprises a written contract between the TPG Entities and Indian Harbor.

31. The TPG Entities have fully performed all of its duties and complied with all terms and conditions in the Policy. Plaintiff, as the assignee of TPG's rights under the Policy, is entitled to the full benefits of the Policy.

32. Indian Harbor breached its duties under the Policy by, among other things:

   a. Denying coverage under the Policy for the Underlying Action;
   b. Refusing to pay defense fees and costs incurred in the Underlying Action;
   c. Failing and refusing to conduct an investigation of coverage for the Underlying Action;
   d. Withholding benefits due under the Policy.

33. As a direct and proximate result of Indian Harbor's breach of the insurance contract, Plaintiff, as the assignee of TPG's rights under the Policy, suffered actual damages in an amount to be proven at trial, plus interest thereon.

34. As a proximate result of Indian Harbor's failure and refusal as herein alleged, Plaintiff, as the assignee of TPG's rights under the Policy, has been damaged, at a minimum in the sum of $500,000.

35. As a further and proximate result of Indian Harbor's failure and refusal as herein alleged, Plaintiff, as the assignee of TPG's rights under the Policy, has and continues to suffer damages under the Policy, plus interest and other economic and consequential damages, in amounts not fully ascertained, but within the jurisdiction of this court, and which will be sought in an amount according to proof at trial.

## **PRAYER**

**WHEREFORE**, Plaintiff prays for judgment against Indian Harbor and DOES 1-10 as follows:

1. For compensatory, general and special damages according to proof at trial;

2. For costs incurred in connection with this lawsuit;

3. For prejudgment interest;

4. For all other relief the Court deems just and proper.

Dated: December 3, 2024            **CALLAHAN & BLAINE, APLC**

By: _/s/ Edward Susolik_
Edward Susolik
Sharon Yuen
Attorneys for CALLAHAN & BLAINE, APLC

# **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury of all issues, claims and causes of action that properly may be tried to a jury in this action.

Dated: December 3, 2024  **CALLAHAN & BLAINE, APLC**

By: _____
Edward Susolik
Sharon Yuen
Attorneys for Plaintiffs CALLAHAN & BLAINE, APLC